HENRY V. BULLER and ROBERT L. TAYLOR *vs.* THE SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES.

The complainants, who were the lessees of certain water rights, had entered into an agreement with the defendants, who were their lessors, regulating the mode in which the water should be drawn off from the canal. The agreement having been carried into execution by the erection of the proper works, the defendants afterwards commenced an alteration of the works, so as to draw off the water in a mode which was not in strict conformity to the agreement. A bill being filed, and an injunction obtained, the defendants answered, insisting that the alteration would not injure the complainants, and was not inconsistent with their rights under the agreement—*held*, that this court ought to keep the parties in *statu quo* until the merits of the controversy should be heard, and until it should be decided whether, for the reasons assigned in the answer, the defendants were entitled to have the water discharged in any other manner than in that specified in the agreement.

THE CHANCELLOR. The complainants are the lessees of water rights, or privileges, held under the Society for Establishing Useful Manufactures at Paterson. They hold several " water lots" under different leases. These lots are along the upper canal, and are supplied with water from that canal. A dispute arose between the complainants and defendants, as to the manner in which the water was drawn off from the upper canal, the complainants complaining that the water was precipitated from the upper to the lower canal by a *pitch gate*, or *weir*, in such a manner as to draw down the head of water in

the upper canal, and so as to deprive the complainants of the full benefit of the supply of water under their leases. The difficulties were compromised between the parties, and they entered into an agreement, on the 18th of April, 1857, by which it was agreed that the water in the upper race, or canal, should be regulated as follows: that the defendants should erect a waste weir in a place designated in the agreement, the top of which waste weir should be on a level with the top of the weir, or pitch, then existing, and the length of which waste weir should be sixty feet, and at the option of the society, should be made one hundred feet long, including the weir then there; and the water from the upper to the lower canal was to pass over, and be discharged at the new waste weir so to be built under the agreement.

The waste weir was constructed according to the agreement, and the water was discharged over it. The bill charges that the society have commenced digging and cutting about the weir, and threaten and intend to take it down, and insert a gate or gates therein, so as to be able, by raising said gates, to let the water out of the upper canal at will. An injunction was granted to prevent the defendants making the alteration in the weir. .

The defendants have answered the bill. They admit the agreement and its execution, and the regulation of the water in the upper canal so as to discharge the water over the weir. They admit that they are about making an alteration in the weir, by putting in what they call a self-regulating weir, which will be so constructed with leaves hung on pivots that when, by reason of an excess of water in the upper canal, from any cause the water rises above the top of the weir, such leaves will open, and so remain until the height of the water is on a level with the top of the weir, and then said leaves will close again.

The defendants, in a very lengthy answer, give their reasons why they consider they have a right to make this

alteration. They insist the alteration will not injure the complainants, and is not inconsistent with their rights under the agreement.

That the head of water in the upper canal is of great importance to the complainants is to evident too admit of dispute. It is quite as clear that the head of water in the canal will be materially different whether the water is discharged *over* the weir, or whether it is discharged lower down through the leaves hung on pivots at the bottom of the weir. If this be so, then the contemplated alteration will be a great and permanent detriment to the complainants. Now I do not intend to decide, on this motion, whether the reasons given in the answer are sufficient justification for the defendants making a structure different from that which the agreement stipulates. They present new matters by way of defence, which ought to be investigated before the rights of the parties are determined.

The bill and answer both admit the agreement. It was carried into execution. By the agreement, a weir was to be constructed, and the water to be discharged *over* that weir. This was done, and both parties are enjoying their rights under that agreement. The defendants say they are disappointed in their expectations as to the working of the weir, and they are preparing an apparatus by which the water will not be discharged *over* the weir, but in some other way. This is clearly in violation of the agreement. The question now is—whether the court will keep the parties in *statu quo* until the merits of the controversy are heard, and until it shall be decided whether, for the reasons assigned in the answer, the defendants are entitled to have the water discharged in any other manner than in that specified in the agreement.

The equity of the bill is attempted to be avoided by setting up new matter. The rule is, that where new matter is alleged in avoidance the injunction will not be dissolved. This case is not an exception to the rule,

and I think the defendants should be enjoined until the rights of the parties are determined. The case is a proper one for an injunction, and its continuance proper, as the case is presented by the bill and answer, until a final hearing.